**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| ROBERT E. MORRIS, #R71372, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 17-cv-01166-JPG |
|  | ) |  |
| DR. JOHN TROST, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment filed by Defendant Dr. John Trost. (Doc. 25). For the reasons set forth below, the Motion shall be **GRANTED** and this case **DISMISSED with prejudice**.

### PROCEDURAL HISTORY

Plaintiff Robert Morris (Inmate No. R71372), is currently incarcerated at Stateville Correctional Center. This lawsuit was severed from another suit he filed under 42 U.S.C. § 1983 for deprivations of his constitutional rights. *Morris v. Lee*, No. 17-cv-857-NJR-DGW (S.D. Ill.) ("original action"). (Doc. 1). The instant action focuses on a single Eighth Amendment claim against Defendant John Trost ("Dr. Trost") for cancelling Plaintiff's medical permit for two mattresses when he transferred from Stateville Correctional Center ("Stateville") to Menard Correctional Center ("Menard") in November 2016. (*See* Doc. 2). Plaintiff asserts that Dr. Trost intentionally disregarded his permit and committed medical malpractice. (*Id.* at p. 10).

On November 30, 2017, this Court screened the matter pursuant to 28 U.S.C. § 1915A and recognized two separate claims, including an Eighth Amendment deliberate indifference claim (Count 1) and an Illinois medical malpractice claim (Count 2). (Doc. 6). Count 1 survived

1

screening, but Count 2 did not.[1] (*Id*.). The Eighth Amendment deliberate indifference claim in Count 1 is the only claim still at issue.

On April 15, 2019, Dr. Trost filed a Motion for Summary Judgment on the merits of Plaintiff's claim, relying primarily on Dr. Trost's affidavit (Doc. 26-1) and Plaintiff's medical records (Doc. 26-2). (*See* Docs. 25 and 26). Plaintiff filed a response in opposition to the motion on April 22, 2019. (Doc. 28). His arguments are twofold. (*Id*.). First, Plaintiff believed that this case settled until he received the summary judgment motion.[2] (*Id*.). Second, Plaintiff has a copy of the double mattress permit issued by Dr. Obaisi and relies on this permit to contradict all arguments by Dr. Trost that such permits do not exist. (*Id*. at p. 15). He otherwise fails to dispute any facts presented by Dr. Trost, which are summarized below.

### FINDINGS OF FACT

**A.  The Parties**

Plaintiff Robert Morris is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and was housed at Stateville and Menard during the events giving rise to this action. (Doc. 2).

Defendant John Trost is a medical doctor who was employed to provide medical care to inmates at Menard at all times relevant to the Complaint. (Doc. 2). Dr. Trost declined to re-issue a double mattress permit that Plaintiff received from Dr. Obaisi at Stateville in March 2016, following Plaintiff's transfer to Menard in November 2016. (*Id*.).

---

[1] The Illinois medical malpractice claim was dismissed without prejudice because Plaintiff failed to provide the necessary affidavit and certificate of merit in support of the claim. He was given an opportunity to revive Count 2 by filing the necessary documentation but ultimately failed to do so. (Docs. 6, 7, 10). This claim shall now be dismissed *with prejudice*. (*See* Doc. 6, p. 7).

[2] Plaintiff attaches copies of letters from his attorney describing settlement negotiations in Case No. 17-cv-857-NJR-GCS. (Doc. 28, pp. 10-13). Although the instant case may have been part of initial settlement discussions, Case 17-857 ultimately settled on its own on November 14, 2019.

B. **Plaintiff's Medical Care**

  1. <u>**Stateville**</u>

While he was incarcerated at Stateville from January 2015 until November 2016, Plaintiff complained of chronic back and neck pain that had been present for seven years. (Doc. 26-1, ¶ 6). Despite increasing complaints of pain, he consistently reported no injury, no tenderness, and no limitations to his range of motion. (*Id*.). He ambulated without assistance and had a steady gait. (*Id*.). He also engaged in intense daily exercise (*e.g.*, 1,000 pushups, 1,000 dips, and 1,000 sit ups daily). (*Id*. at ¶ 9).

Plaintiff was seen by Stateville's medical staff on a near-monthly basis. (Doc. 26-1, ¶¶ 6-27). He initially declined offers of Tylenol and Ibuprofen to treat his pain. (*Id*. at ¶¶ 7, 13). In early April 2015, a physician's assistant noted that he did *not* require Robaxin, a muscle relaxant used to treat muscle spasms and pain. (*Id*.). Later the same month, Plaintiff began telling his providers that he did not get his Robaxin and needed it. (*Id*. at ¶¶ 10, 12). In July 2015, Plaintiff reportedly found an extra mattress and told a medical provider he needed a medical permit for it. (*Id*. at ¶ 12). By November 3, 2015, Dr. Obaisi diagnosed Plaintiff with chronic low back pain and prescribed him Robaxin. (*Id*. at ¶ 15).

In early 2016, Plaintiff told a nurse that his double mattress also helped with pain. (*Id*. at ¶ 18). The following month, Plaintiff stated that he required Robaxin and a double mattress permit. (*Id*. at ¶¶ 20-21). At the same time, Plaintiff still performed up to 1,000 pushups, sit ups, and dips each day. (*Id*.). X-rays of his upper back, lower back, and neck were negative. (*Id*. at ¶¶ 19, 21). By March 2016, Dr. Obaisi nevertheless diagnosed Plaintiff with upper extremity neuropathy and chronic back pain and ordered a 90-day prescription for Neurontin, a 30-day prescription for Robaxin, and a 12-month double mattress permit. (*Id*. at ¶¶ 21-22). In June 2016, Dr. Obaisi

issued Plaintiff a 6-month prescription for Neurontin. (*Id*. at ¶ 25). In July 2016, Plaintiff was given more Robaxin. (*Id*. at ¶ 26). In August 2016, Dr. Obaisi issued another 6-month prescription for Neurontin and a 2-month prescription for Robaxin. (*Id*.).

### 2. **Menard**

Plaintiff transferred to Menard on November 23, 2016. (Doc. 26-1, ¶¶ 28-29). A Stateville Transfer Screening[3] completed one day earlier mentions nothing about Plaintiff's back pain, his prescriptions for Neurontin or Robaxin, or his double mattress permit. (*Id*. at ¶ 28). A Menard Intake Screening completed on the date of his transfer states that all medications listed on Stateville's Transfer Screening should be continued. (*Id*. at ¶ 29).

Plaintiff submitted a written request for Neurontin and a double mattress to Menard's healthcare unit ("HCU"). (*Id*. at ¶ 30). Two days later, a nurse reinstated his prescription for Neurontin on November 26, 2016. (*Id*. at ¶¶ 31-32). He was scheduled to meet with Dr. Trost to discuss his double mattress request but the doctor was unable to meet with him as planned on November 30, 2016. (*Id*. at ¶ 33).

Dr. Trost met with Plaintiff on December 7, 2016. (*Id*. at ¶ 34). The doctor issued him a 6-month prescription for Robaxin but denied his requests for a double mattress. (*Id*.). Dr. Trost noted that such a permit "doesn't exist." (*Id*.). Trost later explained that the form used for issuance of medical permits included no option for a double mattress, and he had never heard of an inmate receiving permission for a double mattress at Menard. (*Id*.). In fact, the form offers an option for "other" permits, and Dr. Obaisi completed this section when issuing the double mattress permit. (*See* Doc. 28, p. 15).

---

[3] However, several other medications are noted, including Vistaril (antihistamine), Remeron (antidepressant), Geodon (antipsychotic), and Effexor (antidepressant). (*Id*.).

4

Plaintiff met with a nurse for a wellness check on December 31, 2016. (Doc. 26-1, ¶ 35). He had no complaints. (*Id*.). Dr. Trost met with Plaintiff one final time on February 22, 2017, and renewed his prescription for Neurontin. (*Id*. at ¶ 36). Dr. Trost left his position as Menard's Medical Director on March 17, 2017. (*Id*. at ¶ 37).

In his affidavit, Dr. Trost opines that a double mattress does not qualify as medical treatment for back pain. (*Id*. at ¶¶ 34, 38). Treatment options include pain relievers, muscle relaxers, education, exercise, physical therapy, and surgery. (*Id*. at ¶ 34). Plaintiff's specific treatment plan included Neurontin, a nerve pain medication, and Robaxin, a muscle relaxer. (*Id*. at ¶ 38). To the extent Dr. Obaisi believed a double mattress was medically necessary, Dr. Trost simply disagreed with his opinion regarding treatment. (*Id*.).

**LEGAL STANDARDS**

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). The Court must instead "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party."

*Hansen*, 763 F.3d at 836. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

The Eighth Amendment prohibits cruel and unusual punishment of convicted persons. *See* U.S. CONST., amend. VIII. It safeguards inmates against pain and suffering that serves no penological purpose. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The Court applies a two-part analysis to Eighth Amendment claims of inadequate medical care. *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). First, the Court must determine whether the plaintiff suffered from a sufficiently serious medical condition, from an objective standpoint. *Id*. The parties do not dispute that Plaintiff's back pain qualifies as a sufficiently serious medical condition for purposes of his claim. Second, the Court must determine whether each defendant responded with deliberate indifference, from a subjective standpoint. *Id*. This case hinges on the second question--that is, whether Dr. Trost responded to Plaintiff's serious medical condition with deliberate indifference when the doctor refused to re-issue him a double mattress permit.

A defendant is deliberately indifferent when he knows of a serious risk to the prisoner's health but consciously disregards the risk. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citation omitted). Negligence, gross negligence, or even recklessness does not support an Eighth Amendment claim. *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). The deliberate indifference standard "approaches intentional wrongdoing." *Holloway*, 700 F.3d at 1073.

6

The undisputed facts in this case reveal nothing more than a disagreement regarding the proper course of treatment between two medical professionals, Dr. Obaisi and Dr. Trost. Even if the Court assumes that Dr. Obaisi issued the permit (and did so regularly for Stateville inmates), no reasonable jury could find that Dr. Trost's contrary opinion amounted to deliberate indifference. Inmates are not entitled to demand specific treatment or "to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). They are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id*. at 267. Standing alone, a disagreement between two medical providers about treatment is insufficient to support a deliberate indifference claim. *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). The Seventh Circuit has characterized such cases "not [as] deliberate indifference to a serious medical need, but as a challenge to a deliberate decision by a doctor to treat a medical need in a particular manner." *Lockett*, 937 F.3d at 1023 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotation marks omitted)). When presented with such cases, the court should defer to a medical professional's treatment decision "unless no minimally competent professional would have so responded under those circumstances." *Id*.; *Pyles*, 771 F.3d at 409.

Whether a double mattress permit in combination with prescription drug treatment (or some other form of treatment altogether) is indicated is a "classic example" of a "matter for medical judgment." *West v. Matz*, 740 F. Appx. 103, 104 (7th Cir. 2018) (quoting *Estelle*, 429 U.S. at 107). While "poor medical judgment does not amount to medical deliberate indifference, it can rise to the level of negligence." *Id*. As previously stated, however, this case does not involve a medical negligence claim because Count 2 has already been dismissed. (*See* Doc. 6).

Based on the foregoing discussion, the Court finds that Dr. Trost is entitled to summary judgment on the merits.

**DISPOSITION**

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (Doc. 25) is **GRANTED**. **COUNT 1** is **DISMISSED with prejudice** against Defendant **DR. JOHN TROST**. **COUNT 2** is also **DISMISSED with prejudice** against Defendant **DR. JOHN TROST** (*see* Doc. 6) (dismissal of claim will become with prejudice upon expiration of the deadline for filing the required affidavit and certificate of merit).

The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**.

**DATED: 3/31/2020**          s/J. Phil Gilbert
                              **J. PHIL GILBERT**
                              **United States District Judge**